IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| THE OCEAN CONSERVANCY; | ) | CV No. 02-00393 (ACK/LEK) |
| TURTLE ISLAND RESTORATION | ) | |
| NETWORK; AND CENTER FOR | ) | |
| BIOLOGICAL DIVERSITY | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NATIONAL MARINE FISHERIES | ) | |
| SERVICE; UNITED STATES | ) | |
| DEPARTMENT OF COMMERCE; AND | ) | |
| CARLOS M. GUTIERREZ[1], | ) | |
| SECRETARY OF THE DEPARTMENT | ) | |
| OF COMMERCE, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HAWAII LONGLINE | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Intervenor. | ) | |
| | ) | |

ORDER GRANTING PLAINTIFFS' MOTION TO VACATE ORDER DENYING
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

BACKGROUND

On August 29, 2005, The Ocean Conservancy, Turtle

Island Restoration Network, and the Center for Biological

Diversity (collectively "Plaintiffs") filed a Motion to Vacate

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1),
Carlos M. Gutierrez has been substituted in his official capacity
for his predecessor, Donald L. Evans.

Order Denying Plaintiffs' Motion for Preliminary Injunction ("Motion to Vacate").  On September 26, 2005, Defendants National Marine Fisheries Service ("NMFS"), United States Department of Commerce, and Donald L. Evans, Secretary of the Department of Commerce (collectively "Defendants") filed an Opposition to Plaintiffs' Motion to Vacate Order Denying Plaintiffs' Motion for Preliminary Injunction ("Defendants' Opposition to Motion"). Intervenor Hawaii Longline Association ("Intervenor") filed its own Memorandum in Opposition to Plaintiffs' Motion to Vacate Order Denying Plaintiffs' Motion for Preliminary Injunction on September 26, 2005 ("Intervenor's Opposition to Motion").  On October 18, 2005, Plaintiffs filed a Reply to Defendants' Opposition to Plaintiffs' Motion to Vacate Order Denying Plaintiffs' Motion for Preliminary Injunction ("Plaintiffs' Reply to Defendants' Opposition") and a Reply to Hawaii Longline Association's Opposition to Plaintiffs' Motion to Vacate Order Denying Plaintiffs' Motion for Preliminary Injunction (Plaintiffs' Reply to Intervenor's Opposition").

The Court has issued a lengthy and detailed Order in this case and will not recount the parties' positions or the factual circumstances giving rise to the action.[2]  A brief

---

[2]   The Court incorporates by reference its Order Finding an Environmental Impact Statement Is Required Under the National Environmental Policy Act but Denying Plaintiffs' Motion for Preliminary Injunction Because of Unusual Circumstances, filed November 22, 2002 ("November 22, 2002 Order").

procedural history is necessary, however, to place the discussion below in context.

Plaintiffs originally filed this action on June 27, 2002 to challenge scientific research permit #1303, issued by NMFS on January 25, 2002 (the "Permit").  The Permit authorized the testing of certain experimental longline fishing methods and equipment designed to reduce turtle bycatch.

On July 19, 2002, Plaintiffs moved for a preliminary injunction.  Plaintiffs argued (1) that the permit violated the Endangered Species Act ("ESA"); and (2) that the Permit violated the National Environmental Policy Act ("NEPA") because an Environmental Impact Statement ("EIS") had not been conducted before NFMS issued the Permit.[3]  On November 22, 2002, the Court issued an Order holding (1) that the Permit did not violate the ESA; (2) that Plaintiffs demonstrated a substantial likelihood NEPA had been violated since an EIS had not been conducted before NMFS issued the Permit; (3) that Defendants were required to complete an EIS by July 31, 2003, should Defendants decide to go forward with the Permit (beyond the research authorized by the

---

[3]  On August 8, 2002, NMFS filed an *ex parte* motion to continue the preliminary injunction hearing.  The Court granted NMFS' motion on the condition that NMFS agree not to proceed with the next phase of the longline experiments until December 1, 2002.

Order);[4] and (4) that Plaintiffs were not entitled to a preliminary injunction because of unusual circumstances.

On November 25, 2002, Plaintiffs appealed the Court's November 22, 2002 Order to the Ninth Circuit and applied for an emergency stay.  On December 19, 2002, the Ninth Circuit issued a stay pending the appeal and restraining Phase II of Scientific Research Permit #1303 from proceeding pending resolution of the appeal.  Ocean Conservancy, Inc. v. National Marine Fisheries Serv., No. 02-17290 (9th Cir. Dec. 19, 2002).

With the stay in place and the appeal pending, NMFS withdrew the Permit.  (March 4, 2003 Order Granting Intervenor's Motion for Stay at 4).  On February 10, 2003, Plaintiffs filed a Motion for Summary Judgment with this Court.  Intervenor promptly filed its Motion for Stay.[5]  Defendants represented to the Court that NMFS would not allow the longline fishing experiments to resume until an EIS was completed.  (March 4, 2003 Order at 4); (Declaration of Dr. William T. Hogarth, dated January 8, 2003, ¶ 8, attached as Exhibit "A" to the Motion for Stay).  The Court

---

[4]   On December 9, 2002, Defendants moved for an order modifying the November 22, 2002 Order to extend the deadline for completion of an EIS to October 1, 2003.  Plaintiffs did not object to this request and the Court entered the modification.

[5]   The Court suggested that the parties stipulate to an order preventing the Permit from being reissued before an EIS is completed and notice is given to Plaintiffs.  Intervenor and Defendants were amenable to the Court's proposal.  Plaintiffs acknowledged that such a stipulation could resolve the case but insisted on pressing forward.

held a hearing and granted the motion on February 20, 2003.  On

March 4, 2003, the Court issued a written order granting

Intervenor's Motion for Stay "until the Ninth Circuit rules on or

dismisses the appeal or until the mediation results in a

resolution of the case." (March 4, 2003 Order at 13).  The Court

found that fairness and efficiency favored staying the action and

specifically noted:

> The Permit—the subject of the litigation—has been
> withdrawn and will not be reissued before an EIS is
> completed.  Furthermore, the Ninth Circuit has already
> stayed Phase II of the Permit pending the appeal.
> Accordingly, no further experimentation through the
> Permit is possible under any conceivable set of facts.
> There is, therefore, no danger of harm to Plaintiffs or
> to their position.

(March 4, 2003 Order at 9).

On December 31, 2003, the Ninth Circuit dismissed

Plaintiff's appeal, from this Court's denial of their motion for

preliminary injunction, as moot and remanded the case to this

Court "for a determination on the merits if and when NMFS

completes the agency actions described herein." Ocean

Conservancy, Inc. v. National Marine Fisheries Serv., 90 F. App'x

499, 501 (9th Cir. 2003).  In determining that the appeal was

moot, the Ninth Circuit relied on NMFS' construction of this

Court's orders as well as NMFS' representations.  The Ninth

Circuit explained:

> NMFS construes the district court's first order,
> combined with its order granting the stay, as
> preventing the performance of any research until after

1) an EIS is prepared; 2) a new Biological Opinion is prepared that takes into account the EIS; and 3) a new permit is issued based on the new Biological Opinion. NMFS represented to this Court that a new EIS is being prepared and that it will not engage in longline fishing research out of Hawaii until the above conditions are met.

Under NMFS's construction and on the basis of its representations to this Court, the appeal of the district court's preliminary injunction denial is moot, because under no circumstances may NMFS engage in the conduct Plaintiffs seek to enjoin.

Id. at 500, 501.  The Ninth Circuit also stated, "[w]e do not vacate the district court's orders below because they serve to maintain the status quo pending the court's final order resolving the merits of this case after completion of any agency action." Id. at 501.

Ultimately, NMFS did not prepare an EIS.  (Motion to Vacate at 6).  NMFS has abandoned any plans to go forward with the research, and it reopened the fisheries on a commercial basis in April 2004, mooting the case.  Id.; Plaintiffs' Reply to Defendants' Opposition (Achitoff Declaration ¶ 3).

## DISCUSSION

The dispositive question of the Motion to Vacate is whether a district court should vacate its previous interlocutory judgment once the entire case has been mooted by the acts of the party that prevailed in the judgment.  The parties devote the bulk of their memos regarding Plaintiffs' Motion to Vacate to the standard the Court should apply in deciding whether to vacate its

6

November 22, 2002 Order.  Plaintiff argues that automatic vacatur
is the rule in cases where, as here the appellant has not
contributed to mootness.  (Plaintiffs' Reply to Defendants'
Opposition at 2).  Intervenor argues, conversely, that Federal
Rule of Civil Procedure 60(b) provides the only legal basis for
Plaintiffs' motion.  (Intervenor's Opposition to Motion at 4).
Intervenor further argues, citing to American Games, Inc. v.
Trade Prods., Inc., 142 F.3d 1164, 1168 (9th Cir. 1998), that
under Rule 60(b)(5), the Court must determine whether vacatur is
appropriate in light of the consequences and attendant hardships
of dismissal or refusal to dismiss and the competing values of
finality of judgment and right to relitigation of unreviewed
disputes.  (Intervenor's Opposition to Motion).  Finally,
Defendants argue that because the November 22, 2002 Order was not
a final judgment, Rule 60(b) is not applicable, Ninth Circuit
precedent does not compel vacatur, and that the Court should
exercise its very broad discretion to deny Plaintiff's Motion to
Vacate.

        The Court first notes that Ninth Circuit precedent does
not squarely address circumstances such as these.  However, the
Ninth Circuit's discussion of the vacatur standards in Dilley v.
Gunn, 64 F.3d 1365 (9th Cir. 1995) is instructive.  In Dilley, an
inmate at Calipatria State Prison brought an action against
prison officials alleging that he had been denied access to the

prison's law library. Id. at 1367. After granting summary judgment in favor of the inmate, the district court issued an injunction requiring improvements to the library. Id. The prison officials appealed the district court's injunctive order, but the appeal was mooted by the transfer of the inmate to another prison. The court only considered the appeal of the injunctive relief, not summary judgment, because of a procedural defect in the defendant's appeal.

In reviewing the law of vacatur, the Ninth Circuit explained that the leading case on vacatur is United States v. Munsingwear, 340 U.S. 36, 39 (1950) in which the United States Supreme Court explained:

> The procedure of automatic vacatur 'clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance. When that procedure is followed, the rights of all parties are preserved; none is prejudiced by a decision which in the statutory scheme was only preliminary.'

Dilley, 64 F.3d at 1369 (quoting Munsingwear, 340 U.S. at 40). The Ninth Circuit went on to explain that in the years following Munsingwear it treated automatic vacatur as the established practice, applying whenever mootness prevented appellate review. Id. The Ninth Circuit noted, however, that the Munsingwear rule was neither statutorily nor constitutionally required and thus the Ninth Circuit acknowledged an "exception" to the established practice of automatic vacatur when an appeal is mooted not due to

8

"happenstance",[6] but "when the appellant has by his own act caused the dismissal of the appeal." Id. at 1370 (quoting Ringsby Truck Lines, Inc. v. Western Conference of Teamsters, 686 F.2d 720, 722 (9th Cir. 1982)).  Under such circumstances, the Ninth Circuit explained:

> Our established procedure is not to vacate the district court's decision automatically, but to remand so the district court can decide whether to vacate its judgment in light of 'the consequences and attendant hardships of dismissal or refusal to dismiss' and 'the competing values of finality of judgment and right to relitigation of unreviewed disputes.'

Id. at 1370 (quoting Ringsby, 686 F.2d at 722).

The Ninth Circuit then discussed the United States Supreme Court's opinion in U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18 (1994).  The Ninth Circuit explained that "U.S. Bancorp makes clear that the touchstone of vacatur is equity" and that "[a]lthough the Supreme Court 'st[ood] by Munsingwears' dictum that mootness by happenstance provides sufficient reason to vacate,' it rejected the notion that automatic vacatur was the 'established practice' *whenever* mootness prevents appellate review of a lower court decision." Dilley, 64 F.3d at 1370 (quoting U.S. Bancorp Mortgage, 513 U.S. at 391 n.3, 390-93)(internal citation omitted).  Rather, in U.S.

---

[6] A case becomes moot by happenstance when it has "become moot due to circumstances unattributable to any of the parties." U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 23 (1994)(quoting Karcher v. May, 484 U.S. 72, 82, 83 (1987)).

Bancorp, the United States Supreme Court made clear that Munsingwear's reference to happenstance "must be understood as an allusion to [the] equitable tradition of vacatur. A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." U.S. Bancorp, 513 U.S. at 391. Likewise, "a litigant should not be bound by an adverse unreviewed judgment 'when mootness results from unilateral action of the party who prevailed below.'" Dilley, 64 F.3d at 1370 (quoting U.S. Bancorp, 513 U.S. at 392). The Ninth Circuit went on to explain that U.S. Bancorp demonstrates that "the equitable principles weighing in favor of vacatur in these situations cut the other direction where the appellant by his own act prevents appellate review of the adverse judgment." Id. The Court concluded that "after U.S. Bancorp, automatic vacatur under Munsingwear can no longer be viewed as the 'established practice' whenever a case becomes moot on appeal, and that the primary inquiry is whether the appellant caused the mootness by his own voluntary act." Id. at 1370 n.4 (also noting that the Second and Tenth Circuits were in accord).

In Dilley, the Ninth Circuit found that the facts surrounding Dilley's transfer from Calipatria, the event which mooted the appeal, were not sufficiently developed in the record for it to determine whether Munsingwear or Ringsby controlled the

case.  *Id*. at 1371.[7]  The Ninth Circuit, accordingly, remanded to the district court with instructions to determine, as a threshold matter, whether *Ringsby* or *Munsingwear* applied.  *Id*.

While *Dilley* is instructive on the law of vacatur, the procedural posture of *Dilley* is distinguishable from that of the matter at hand.  In *Dilley*, the defendant-appellant mooted the case by its own actions when it transferred the plaintiff to another institution.  As a result, imposing automatic vacatur would have had the potential effect of allowing the defendant-appellant to wipe the record clear of the adverse judgment by its own actions.  To avoid that possibility, the Ninth Circuit remanded the case to the district court to determine whether vacatur would be equitable under the circumstances.

The *Ringsby* vacatur exception prevents a party from clearing the record of an adverse determination by unilaterally

---

[7] The Ninth Circuit's full instructions to the district court were as follows:

> If the district court concludes that Dilley's transfer from Calipatria occurred 'by happenstance,' then automatic vacatur is appropriate under *Munsingwear*. If, however, the district court finds that the defendants played a role in Dilley's transfer and that the transfer was related to the pendency of this appeal, then *Ringsby* applies to this case and the district court must then decide whether to vacate the injunction in light of 'the consequences and attendant hardships of dismissal or refusal to dismiss' and the 'competing values of finality of judgment and right to relitigation of unreviewed disputes.'

*Dilley*, 64 F.3d at 1372 (*quoting* *Ringsby*, 686 F.2d at 722).

acting to moot a case.  See Ringsby, 686 F.2d at 721, 722.  Here,
the November 22, 2002 Order contained rulings adverse to all
parties.[8]  Plaintiffs appealed the denial of the preliminary
injunction.  Defendant-Appellee NMFS then withdrew the Permit and
reopened commercial fishing, thereby mooting Plaintiffs' appeal
of the denial of the preliminary injunction; although NMFS
opposes vacatur of the Order.  See Defendants' Opposition to
Motion at 11 ("The Court should use its very broad discretion to
deny Plaintiffs' Motion to Vacate the Order Denying Plaintiffs'
Motion for Preliminary Injunction.").  Therefore, the Court
concludes that the exception to vacatur outlined in Ringsby does
not apply to the present case.

However, Plaintiffs-Appellants were deprived of their
right to an appeal of the preliminary injunction determination
when the case was mooted.  As stated above, "a litigant should
not be bound by an adverse unreviewed judgment 'when mootness
results from unilateral action of the party who prevailed
below.'"  Dilley, 64 F.3d at 1370 (quoting U.S. Bancorp Mortgage,
513 U.S. at 392).  So it is clear that Plaintiffs should not be

---

[8]  See November 22, 2002 Order holding (1) that the Permit
did not violate the ESA; (2) that Plaintiffs demonstrated a
substantial likelihood NEPA had been violated since an EIS had
not been conducted before NMFS issued the Permit; (3) that
Defendants were required to complete an EIS by July 31, 2003
should Defendants decide to go forward with the Permit (beyond
the research authorized by the Order); and (4) that Plaintiffs
were not entitled to a preliminary injunction because of unusual
circumstances.

bound by an unreviewed adverse judgment, but the question remains whether this rule applies to interlocutory orders.

The procedural vehicle for vacatur of final judgments is Federal Rule of Civil Procedure 60(b).  This rule permits relief from a judgment when "it is no longer equitable that the judgment should have prospective application."  Fed. R. Civ. P. 60(b).  However,

> The addition of the qualifying word "final" emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.

Fed. R. Civ. P. 60(b), Advisory Committee Notes, 1946 Amendment. Since Federal Rule of Civil Procedure 60(b) does not apply, the Court considers the approaches of other courts in determining whether or not to vacate a preliminary order in a case.

Cases discussing vacatur in the context of mooted appeals from orders granting or denying preliminary injunctions do not establish an absolute rule as to whether such orders should be vacated when the entire case is moot.  See e.g., Knaust v. City of Kingston, 157 F.3d 86, 87 (2d Cir. 1998)(holding that appeal from denial of motion for preliminary injunction was moot and vacating the district court's order which itself was moot by the time it was issued); Forbes v. Arkansas Educ. Television Communication Network Found., 982 F.2d 289, 289 (8th Cir. 1992)

13

(finding that appeal of denial of preliminary injunction was moot although the underlying case was not and remanding with instructions to vacate order denying a preliminary injunction); Fauconniere Mfg. Corp. v. Secretary of Defense, 794 F.2d 350, 352 (8th Cir. 1986)(dismissing appeal as moot and remanding to district court with directions to vacate as moot its order granting a preliminary injunction but noting that the complaint remained pending); Ethredge v. Hail, 996 F.2d 1173, 1177 (11th Cir. 1993)(dismissing appeal from denial of a preliminary injunction as moot and vacating the opinion of the district court to "prevent the district court's opinion from spawning precedential consequences").

Wright & Miller have also considered vacatur of a preliminary injunction and observed:

> The general practice on appeal from final judgments need not be carried over to interlocutory appeals or other special circumstances.  The easiest illustration is provided by appeals from injunction orders that have expired or become moot; *if the case remains alive in the district court*, it is sufficient to dismiss the appeal without directing that the injunction order be vacated....

13A Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure Jurisdiction 2d § 3533.10 (2005 Supplement)(emphasis added); see also McLane v. Mercedes-Benz of North America, 3 F.3d 522, 524 n. 6 (1st Cir. 1993)(internal citations and quotation marks omitted)(stating that "in the case of interlocutory appeals ... the usual practice is just to

dismiss the appeal as moot and not vacate the order appealed from").

Here, however, the entire case, not just the interlocutory appeal, has become moot because the experiment at issue has been abandoned entirely. (Motion to Vacate at 10). Thus, this Court will not be called upon to render a final judgment on the merits of Plaintiffs' claims. Accordingly, Plaintiffs will not have the opportunity to appeal from the judgment. The Court next considers what effect its Order may have on future litigation.

Intervenor argues that this Court's Order should not be vacated because it has no preclusive effect. (Intervenor's Opposition to Motion at 3). Generally, preliminary orders do not have a preclusive effect, but "that is not always true; if a case does not go all the way to judgment, a preliminary injunction issued in it may be given collateral estoppel effect in future litigation between the parties." Gjertsen v. Board of Election Comm'rs of the City of Chicago, 751 F.2d 199, 202 (7th Cir. 1984)(citation omitted); see also Commodity Futures Trade Comm'n v. Board of Trade of the City of Chicago, 701 F.2d 653, 657 (7th Cir. 1983)(citations omitted)(stating that "[w]hether or not to vacate decisions granting or denying preliminary injunctions would have only academic interest ... if findings made in such decisions did not have preclusive effect; but they do if the

circumstances make it likely that the findings are accurate,

reliable."). Wright and Miller also explained:

> [I]t is possible that a court may decide that a prior
> ruling need not be vacated because there is no
> possibility that it will have any collateral
> consequences. Although this approach is tempting, it
> should be easier to vacate than to make a responsible
> determination that there is indeed no risk of future
> consequences. In contrast, a court may be tempted to
> conclude that its findings might warrant preclusive
> effect in later litigation, and refuse to vacate so
> that later courts can employ preclusion if it seems
> appropriate. If this course is appropriate at all, it
> should be followed only as to findings that have been
> fully litigated and subject to appellate review.

Wright, Federal Practice and Procedure Jurisdiction 2d § 3533.10.

In addition, Defendants contend that courts do not

vacate orders "to prevent them from having precedential effect."

Barber v. State Farm Mutual Automobile Insurance Company, 964

F.2d 636, 638 (7th Cir. 1992). However, the Ninth Circuit has

explained that it does vacate the orders of a district court "to

erase any *precedential or preclusionary* effect of those orders."

Kuahulu v. Employers Ins. of Wausau, 557 F.2d 1334, 1337 (9th

Cir. 1977)(citation omitted)(emphasis added).

It should also be noted that the Ninth Circuit declined

to vacate the denial of the preliminary injunction in its

December 31, 2003 Order. Plaintiffs asked the Ninth Circuit to

vacate the Court's Order when it determined that the motion for

preliminary injunction was moot. Plaintiffs' Reply to

Intervenor's Opposition, Achitoff Declaration ¶ 2. Citing Wright

and Miller, the court stated "[w]e do not vacate the district court's orders below because they serve to maintain the status quo pending the court's final order resolving the merits of this case after completion of any agency action. *See* Wright & Miller, Federal Practice & Procedure § 3533.10." Ocean Conservancy, 90 F. App'x at 501.

At that time, the Ninth Circuit did not base its vacatur determination on the preceding considerations about the appropriate standards for vacatur. The Ninth Circuit explained that the underlying order helped to maintain the status quo preventing NMFS from continuing longline fishing research without a new EIS. Id. at 501. Presently, NMFS has abandoned any plans to complete an EIS or go forward with the research, having reopened the fishery on a commercial basis. Thus, the Ninth Circuit's decision not to vacate had a practical justification at the time that no longer applies. The Court concludes that the Ninth Circuit's decision not to vacate the underlying order has no effect on the current determination of whether vacatur is appropriate.

The Court next addresses the parties' usage of the November 22, 2002 Order in other legal matters. Plaintiffs argue that they "are already facing the prospect of being 'prejudiced by a decision which in the statutory scheme was only preliminary.' Plaintiffs' Motion to Vacate at 12 (citing Dilley,

64 F.3d at 1369).  Plaintiffs allege that in an answering brief in another lawsuit Intervenor characterized the present case as one where the substantive claims had been rejected by a court. (Motion to Vacate, Ex. 1)(citing Turtle Island Restoration Network v. Department of Commerce, CV No. 04-0528 (D. Haw. 2004)(a challenge to NMFS' reopening of a swordfish fishery)). In the same brief, Intervenor acknowledged that Plaintiff Turtle Island succeeded on a procedural challenge in the present case. The Intervenor also attached excerpts from the November 22, 2002 Order that highlighted conclusions in it favor.

However, in the same appeal, Plaintiffs made the following statement in their opening brief about this case: "[a]lthough the district court found NMFS had violated NEPA by failing to prepare an EIS, it failed to issue a preliminary injunction, and the plaintiffs appealed to this Court, which issued a stay pending appeal." (Intervenor's Opposition to Motion, Ex. A at 10).[9]  Then, in the same brief, Plaintiffs summarized the Defendants' arguments made before the Ninth Circuit and the Defendants' subsequent conduct.  Id. at 10, 11.

---

[9]  Plaintiffs do not refute they were the first to cite to the Court's Order.  In fact, it is unlikely the issue of vacatur would be before this Court if Plaintiffs themselves had not first referenced the Order in another lawsuit.  This factor should be considered in the event there is a motion for attorney's fees in conjunction with Plaintiffs' subject motion.

In Plaintiffs' Reply to Intervenor's Opposition, they contend that the references they made to the November 22, 2002 Order and surrounding circumstances were appropriate because the Defendants had already conceded that they had failed to prepare an EIS.  On the other hand, Plaintiffs argue that Intervenor cited the November 22, 2002 Order regarding disputed matters that will never be subject to appeal.  While Intervenor asserts that it only referred to the November 22, 2002 Order to rebut and correct Plaintiffs' brief, Plaintiffs vehemently disagree. Rather, Plaintiffs contend that Intervenor's purpose was to "portray plaintiffs as perennial losers in court." (Plaintiffs' Reply to Intervenor's Opposition at 11).  The Court is not persuaded by Plaintiffs' contention that they fairly cited the November 22, 2002 Order but Intervenor did not.  At this time, there is no evidence a party has argued that the Court's Order has a collateral estoppel or res judicata effect in any other lawsuit.

In summation, the November 22, 2002 Order denied Plaintiffs' Motion for a Preliminary Injunction, but the matter became moot due to Defendants-Appellees' unilateral action taken before the appeal process could be completed.  The Order was not final, but the case has reached its final disposition and no further rulings will be made regarding the underlying substantive matters.  When the unilateral acts of the prevailing party moot a

final order before an appeal can be adjudicated, the Ninth Circuit vacates the order to prevent other parties from being unfairly biased by an adverse unreviewed order.  Recalling that vacatur is based upon equity, this practice is fair because it prohibits one party from destroying another party's right to appeal.

The Ninth Circuit has also explained that district court opinions are vacated to remove preclusive and precedential effects.  In addition, other courts have explained that in cases where a preliminary injunction is the only vestige remaining from a case that was mooted, that order may have similar preclusive or precedential value.  The Court does not believe that the Ninth Circuit's rationale for declining to vacate in December 2003 persists.  The Court does recognize that Plaintiffs, the party pursuing vacatur, have, along with the Intervenor, made citations to the case at hand in at least one other lawsuit.  However, the Court concludes that no party has used the November 22, 2002 Order in a way that would negate the foregoing rationale for vacating the judgment.

For all of these reasons, the Court concludes that it is equitable to vacate November 22, 2002 Order denying a preliminary injunction.  The Order is not vacated on the merits nor because the Court's Order was not well reasoned, but in light of the changed circumstances caused by NMFS withdrawing the

permit and reopening commercial fishing.  The reasoning of the Order is available to others whether or not it is vacated. Therefore, the Court grants Plaintiffs' Motion to Vacate Order Denying Plaintiffs' Motion for Preliminary Injunction.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion to Vacate Order Denying Plaintiffs' Motion for Preliminary Injunction.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 17, 2006.



_____
Alan C. Kay
Sr. United States District Judge

THE OCEAN CONSERVANCY V. NATIONAL MARINE FISHERIES SERVICE, CV No. 02-00393 (ACK/LEK): ORDER GRANTING PLAINTIFFS' MOTION TO VACATE ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION.